**WRIGHT & REIHNER, P.C.**  Attorneys for Plaintiff
By: Joseph T. Wright, Jr., Esquire
I.D. No. 32690
By: Danielle M. Mulcahey, Esquire
I.D. No. 76999
148 Adams Avenue
Scranton, Pennsylvania 18503
(570) 961-1166 Telephone
(570) 961-1199 Facsimile

---

| | | |
|---|---|---|
| GORDON C. HOFFMANN | : | IN THE UNITED STATES DISTRICT |
| Plaintiff | : | COURT FOR THE MIDDLE |
| v. | : | DISTRICT OF PENNSYLVANIA |
| CROMPTON & KNOWLES COLORS INCORPORATED, now CROMPTON COLORS, INC. and SENSIENT TECHNOLOGIES CORPORATION | : : : : | NO. (Judge_____) |
| Defendants | : | JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** the Plaintiff, GORDON C. HOFFMANN, by and through his undersigned counsel, and hereby complains of the Defendants, CROMPTON & KNOWLES COLORS INCORPORATED, now CROMPTON COLORS CORPORATION, and SENSIENT TECHNOLOGIES CORPORATION, as follows:

## I.  PARTIES

1.      Plaintiff, GORDON C. HOFFMANN ("Hoffmann"), is an adult individual residing at 209 Plymouth Drive, Matthews, North Carolina  28104-7310.

2.      Upon information and belief, Defendant, CROMPTON & KNOWLES COLORS INCORPORATED, now CROMPTON COLORS, INC. ("Crompton"), at all times material hereto, was and still is a Delaware Corporation with its principal place of business in the State of Connecticut.  Crompton conducts business and/or is licensed to conduct business in the Middle District of Pennsylvania.

3.      Upon information and belief, Defendant, SENSIENT TECHNOLOGIES CORPORATION ("Sensient"), at all times material hereto, was and still is a Wisconsin Corporation with its principal place of business in the State of Wisconsin. Sensient conducts business and/or is licensed to conduct business in the Middle District of Pennsylvania.

## II.  JURISDICTION AND VENUE

4.      Jurisdiction exists against the Defendant pursuant to 28 U.S.C §1332 in that Plaintiff Hoffmann a citizen and resident of the State of North Carolina; Defendant Crompton is a citizen of the State of Delaware and the State of Connecticut; Defendant Sensient is a citizen of the State of Wisconsin; and the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, exclusive of interest and costs.

5. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391, in that jurisdiction is founded on diversity of citizenship only, and the Defendants are residents of the Middle District of Pennsylvania, as defined in 28 U.S.C. § 1391(c).

### III. OPERATIVE FACTS

6. Plaintiff Hoffmann was employed by Crompton as Vice President of the Industrial Products Division.

7. On or about February 15, 2001, Crompton and Hoffmann entered into an Employment Agreement.

8. The Employment Agreement provides, in part, as follows:

> If, during the Employment Period, the Corporation shall terminate the Executive's employment other than for Cause, Disability, or death, or the employment of the Executive shall be terminated by the Executive for Good Reason:
>
> (i) The Corporation shall pay to the Executive the following amounts:
>
> (A) for a one (1) year period following the Date of Termination, the Executive's Base Salary in the same manner that it was paid and at the rate in effect on the Date of Termination or, if higher, at the highest rate in effect at any time within the 90-day period preceding the Effective Date;
>
> (B) the average of the total annual incentive compensation paid to the Executive under the Corporation's Management Incentive Plan for each of the last three full fiscal years of the Corporation during the Employment Period;

    (C) in the case of compensation previously deferred by the Executive, all amounts of such compensation previously deferred and not yet paid by the Corporation,

 9. The Employment Agreement provides that the Employment Period is defined as follows:

> the period commencing on the Effective Date and ending on the earlier to occur of (i) the first anniversary of such date or (ii) the first day of the month coinciding with or next following the Executive's Normal Retirement Date.

 10. The Employment Agreement provides that the Effective Date is defined as follows:

> the date during the "Change of Control Period" . . . on which a Change of Control . . . occurs.

 11. The Employment Agreement provides that the Change of Control Period is defined as follows:

> the period beginning on the date hereof and ending on the earlier to occur of (i) December 31, 2002 or (ii) the first day of the month coinciding with or next following the Executive's normal retirement date. . . .

 12. The Employment Agreement provides that

> a "Change of Control" shall be deemed to have occurred if, during the Change of Control Period, . . . substantially all of the assets are sold or otherwise transferred to a company or entity other than Crompton Corporation or an affiliate of Crompton Corporation.

13. On or about November 30, 2001, substantially all of the assets of Crompton were purchased by Sensient.

14. The purchase of the assets constituted a Change of Control as defined by the Employment Agreement.

15. At or around the time of the asset purchase, Crompton and Sensient entered into an Asset Purchase Agreement whereby Sensient specifically assumed all obligations and liabilities of Crompton under the Employment Agreement.

16. Shortly after the asset purchase, Hoffmann's position, responsibilities and duties of managing the entire Industrial Products division were substantially reduced. Hoffmann's division was divided into two groups, Specialty and Paper. Hoffmann was assigned the now smaller Paper group and another individual was brought in to run the Specialty group.

17. Hoffmann was excluded in other ways from the full participation that he had experienced as Vice President of the Industrial Products division.

18. On March 22, 2002, Hoffmann tendered his resignation effective April 19, 2002. His last day of employment was March 27, 2002 and he was paid through April 5, 2002.

19. Hoffmann's resignation constituted termination for "Good Reason" pursuant to Section 6(c) of his Employment Agreement.

20. Hoffmann's termination occurred during the employment period.

21. Despite demands for payment of the amounts owned pursuant to the Employment Agreement, both Crompton and Sensient have refused to make said payments.

**COUNT I**
**BREACH OF CONTRACT**
**HOFFMANN v. CROMPTON & KNOWLES COLORS**
**INCORPORATED, now CROMPTON COLORS, INC.**

22. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

23. Crompton owed Hoffmann a duty pursuant to the Employment Agreement.

24. The duty was breached when Hoffmann's position, authority, duties and responsibilities were substantially diminished and he was not paid the compensation to which he was entitled pursuant to the Employment Agreement.

25. Hoffmann has suffered damages as a result of Crompton's breach of the Employment Agreement.

**WHEREFORE**, Plaintiff, GORDON C. HOFFMANN demands damages from the Defendant, CROMPTON & KNOWLES COLORS INCORPORATED, now CROMPTON COLORS, INC., in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), exclusive of interest and costs.

## COUNT II
## BREACH OF CONTRACT
## HOFFMANN v. SENSIENT TECHNOLOGIES INCORPORATED

26. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

27. Sensient expressly assumed the duty that Crompton owed Hoffmann pursuant to the Employment Agreement.

28. The duty was breached when Hoffmann's position, authority, duties and responsibilities were substantially diminished and he was not paid the compensation to which he was entitled pursuant to the Employment Agreement.

29. Hoffmann has suffered damages as a result of Sensient's breach of the Employment Agreement.

**WHEREFORE**, Plaintiff, GORDON C. HOFFMANN demands damages from the Defendant, SENSIENT TECHNOLOGIES INCORPORATED in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), exclusive of interest and costs.

## COUNT III
## THIRD PARTY BENEFICIARY
## HOFFMANN v. SENSIENT TECHNOLGIES INCORPORATED

30. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

31. Both Crompton and Sensient expressed an intention to benefit and protect Hoffmann when they included in the Asset Purchase Agreement a provision that Sensient would assume all obligations and liabilities under the Employment Agreement.

32. The intention of Crompton and Sensient in including the foregoing provision can only be effectuated by recognizing Hoffmann's right as a beneficiary of that provision of the Asset Purchase Agreement between Crompton and Sensient.

33. The circumstances surrounding the execution of the Asset Purchase Agreement indicate that Sensient intended to benefit and protect Hoffmann by assuming Crompton's obligations under the Employment Agreement.

34. Hoffmann is an intended beneficiary of the Asset Purchase Agreement provision relating to Sensient's assumption of Crompton's obligations under the Employment Agreement.

35. The duty owed to Hoffmann as an intended third party beneficiary was breached when Hoffmann's position, authority, duties and responsibilities were substantially diminished and he was not paid the compensation to which he was entitled pursuant to the Employment Agreement.

36. Hoffmann has suffered damages as a result of Sensient's breach of the Employment Agreement.

**WHEREFORE**, Plaintiff, GORDON C. HOFFMANN demands damages from the Defendant, SENSIENT TECHNOLOGIES INCORPORATED in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00), exclusive of interest and costs.

>Respectfully submitted,
>
>WRIGHT & REIHNER, P.C.
>
> **/s/** Danielle M. Mulcahey_____
>Joseph T. Wright, Jr., Esquire
>Danielle M. Mulcahey, Esquire
>
>Attorneys for Plaintiff, Gordon C. Hoffmann

DATED: April 1, 2005